REQUESTED BY: Dear Senator Maresh:
You have requested the opinion of this office concerning whether LB 369, which authorizes a type of agency shop, is constitutional pursuant to the provisions of Article XV, section 13 of the Constitution of Nebraska. As you stated, `. . . the LB 369 version of an agency shop is somewhat different from the traditional concept whereby non-union members pay an amount equal to union dues. LB 369 authorizes a service fee to be paid by all employees in the bargaining unit.'
Article XV, section 13 of the Constitution of Nebraska, commonly referred to as the `right to work' law, provides:
 "No person shall be denied employment because of membership in or affiliation with, or resignation or expulsion from a labor organization or because of refusal to join or affiliate with a labor organization; nor shall any individual or corporation or association of any kind enter into any contract, written or oral, to exclude persons from employment because of membership in or nonmembership in a labor organization." (Emphasis ours.)
As you noted, this office considered the issue of whether the inclusion of an agency shop provision in a collective bargaining agreement would violate Article XV, section 13 in an opinion, dated March 2, 1960. Therein it was stated:
 ". . . The `agency shop' is simply an agreement between employer and union that employees who are not union members shall, as a condition of continued employment, contribute an amount equal to the fees and dues paid by union members. . . ." Report of the Attorney General, 1959-60, No. 173, at 295.
The opinion focused on the above emphasized language of Article XV, section 13, particularly the term `affiliate'. Essentially, the conclusion reached in our prior opinion was that the term, `affiliate with' employed alternatively with the term, `to join', indicated that the provision prohibited requiring union membership or, in lieu thereof, the payment of an amount equal to dues, as a condition of employment. Hence our opinion was that an agency shop provision violates Article XV, section 13.
Since our prior opinion was issued, several courts in other jurisdictions have considered the issue of whether their `right to work' laws prohibit an agency shop clause, see e.g., Schermerhorn v. Retail Clerks InternationalAssoc., 141 So.2d 269 (Fla. 1962); Higgins v. CardinalManufacturing Co., 188 Kan. 11, 360 P.2d 456 (1961);Amalgamated Association of Street, Electric R Motor CoachEmployees v. Las Vegas Tonopah-Reno State Coach Line,Inc., 202 F. Supp. 726 (D.C. Nev. 1962); Ficek v. InternationalBrotherhood of Boilermakers, Iron Shop Builders,Blacksmiths, Forgers and Helpers, Local #647,219 N.W.2d 860 (N.Da., 1974); also see, 92 ALR2d 598, 619-620. The above referenced cases held that the agency shop was prohibited by the `right to work' law of that jurisdiction.
LB 369 authorizes an agreement between the employer and the labor organization which is certified as the exclusive bargaining agent, to require all employees in the unit to pay to the labor organization a service fee, which is the equivalent to the employee's proportionate share of the organization's costs of representing the employees. We understand that LB 369 has been amended in committee to more precisely limit the required service fee to the equivalent of the employee's proportionate share of the organization's costs of `negotiating and administering a collective bargaining contract and processing grievances under a collective bargaining agreement.' Thus the required service fee which would be authorized by LB 369 differs in substance from the typical agency shop provision and it could be more precisely labeled a type of `fair share' agreement.
The provisions of LB 369 draw into sharper focus the countervailing arguments raised in the discussions of union security agreements. The argument is advanced that a worker should not be a `free rider' who takes advantage of benefits secured by a union without contributing his share to its support. The contrary argument advanced is that a worker should not be required to support an organization to which he may be opposed and that he should be free to choose which organizations he wants to support. However these perplexing policy arguments are not at issue here, since in our opinion, that decision has already been made through the enactment of Article XV, section 13 of the Nebraska Constitution.
Article XV, section 13 was enacted in 1946 as the result of a referendum petition, thus there is no applicable legislative history. In 1947, LB 344, which contained substantially similar language, was enacted by the Legislature. The legislative history indicates that the principal concern was prohibiting closed shop provisions, although mention was made of prohibiting other forms of union security. In our opinion, the legislative history is not dispositive of the issue presented herein, since, as we noted in our prior opinion, agency shop provisions were not in common usage until after the enactment of `right to work' provisions. Report of the Attorney General, 1959-60, No. 173, at 295-96.
The Nebraska Supreme Court has stated:
 ". . . `This court has also recognized the principle of constitutional interpretation that each and every clause in a constitution has been inserted for some useful purpose. Constitutional provisions should receive even broader and more liberal construction than statutes, and constitutions are not subject to rules of strict construction. . . .'" School District of Seward Education Association v. School District of Seward, 188 Neb. 772, 777-778, 199 N.W.2d 752 (1972), quoting from Anderson v. Tremann, 182 Neb. 393, 155 N.W.2d 322 (1967).
The court in Seward, supra, also stated:
 ". . . `In construing constitutional amendments, consideration should be given to the circumstances leading to their adoption and the purpose sought to be accomplished.'" Id. at 776; quoting from Engelmeyer v. Murphy, 180 Neb. 295, 142 N.W.2d 342 (1966).
In our opinion, employing the above quoted principles of construction and the analysis of the language of Article XV, section 13 as enunciated in our prior opinion, our court may hold that the provisions of LB 369 violate Article XV, section 13 of the Nebraska Constitution. It appears to us that the purpose to be accomplished by the enactment of Article XV, section 13 was to prohibit compulsory unionism and to allow an individual employee to choose whether `to join or affiliate' with a labor organization. It appears to us that the required payment of a service fee, as defined in LB 369, while it is a less restrictive form of compulsory unionism, nevertheless, forces an employee to affiliate with a labor organization. While the issue is far from clear, it is our opinion that the provisions of LB 369 are constitutionally suspect under Article XV, section 13 of the Nebraska Constitution.
Our research has revealed only one case which considers the precise question involved herein. In Florida EducationAssociation v. Public Employees Relations Commission, 81 LC p. 55,037 (1977), a Florida district court of appeals considered the constitutionality of a `fair share rule' under the state's `right to work' provision. The `fair share rule' at issue required employees to pay the labor organization a fee not to exceed an employee's proportionate share of the organization's costs incurred in negotiations and administration of grievance procedures. The court held that the rule was constitutionally invalid as it was repugnant to the `right to work' provision of the Florida Constitution.