BAKER'S SUPERMARKETS, INC., A NEBRASKA CORPORATION, APPELLEE, V. ALBERT L. FELDMAN AND MEYER H. FELDMAN, COTRUSTEES, APPELLANTS.

502 N.W.2d 428

Filed July 9, 1993.    No. S-90-1000.

James D. Sherrets and Karl D. Vogt, of Sherrets Smith & Gardner, P.C., for appellants.

Ray R. Simon and John C. Brownrigg, of Erickson & Sederstrom, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, and FAHRNBRUCH, JJ.

CAPORALE, J.

The plaintiff-appellee lessee, Baker's Supermarkets, Inc., sought a declaration that it had not breached its lease and an injunction preventing the defendant-appellant lessors, the cotrustees of an unnamed trust, Albert L. and Meyer H. Feldman, from interfering with the rights of Baker's in the demised premises. The Feldmans in turn counterclaimed for damages and restitution of the demised premises. Each of the parties moved for summary judgment; the district court sustained the motion of Baker's and denied the Feldmans' motion, thereby dismissing their counterclaim. The Feldmans then appealed, asserting that the district court had erred in, among other things, holding that Baker's was not required to

continuously occupy and use the demised premises and was not obligated to pay a penalty for its failure to do so, and in dismissing their counterclaim. Baker's, on the other hand, contended that by accepting rental payments as ordered by the district court, the Feldmans had forfeited their right to appeal. The Nebraska Court of Appeals rejected the contention made by Baker's, but found the lease to be ambiguous, determined that summary judgment was for that reason inappropriate, and thus reversed the judgment of the district court and remanded the cause for further proceedings. Baker's then petitioned this court for further review on the sole basis that the Feldmans had waived their right to appeal. We now affirm the judgment of the Court of Appeals as modified in this opinion.

We begin our review by recalling once again that the construction of a contract is a matter of law in connection with which we, as an appellate court, have an obligation to reach an independent correct conclusion irrespective of the determination made by the courts below. See, *Northern Bank v. Federal Dep. Ins. Corp.*, 242 Neb. 591, 496 N.W.2d 459 (1993); *Baker v. St. Paul Fire & Marine Ins. Co.*, 240 Neb. 14, 480 N.W.2d 192 (1992); *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992).

We also recall that summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *VanDeWalle v. Albion Nat. Bank,* ante p. 496, 500 N.W.2d 566 (1993); *Amco Ins. Co. v. Norton, ante* p. 444, 500 N.W.2d 542 (1993); *Viking Broadcasting Corp. v. Snell Publishing Co., ante* p. 92, 497 N.W.2d 383 (1993).

Although the denial of a motion for summary judgment is not a final order and thus may not be appealed, when adverse parties have each moved for summary judgment and the trial court sustained one of the motions, the reviewing court obtains jurisdiction over both of the motions, may determine the controversy which is the subject of those motions, and may make an order specifying the facts which appear without

substantial controversy and directing such further proceedings as it deems just. *Nu-Dwarf Farms v. Stratbucker Farms*, 238 Neb. 395, 470 N.W.2d 772 (1991). See, also, *State v. Union Pacific RR. Co.*, 241 Neb. 675, 490 N.W.2d 461 (1992), *modified on other grounds* 242 Neb. 97, 490 N.W.2d 461; *Kimco Addition v. Lower Platte South N.R.D.*, 232 Neb. 289, 440 N.W.2d 456 (1989).

Sometime prior to 1965, Baker's began negotiating with the Feldmans' predecessor in interest to lease space as a tenant at an Omaha shopping center. They reached an agreement for a term of 15 years, which was reduced to writing and executed by the parties on June 10, 1964. This document was replaced by an instrument dated June 25, 1965, for a like term, to commence on the completion of 20,934 square feet of building space to be constructed in the same shopping center by the predecessor. The motivation for the execution of the June 25, 1965, replacement instrument is not clear, but the parties treat the June 25 instrument as controlling. Thus, we refer to this instrument as the "original lease."

On June 23, 1977, Baker's and the Feldmans as the successors in interest to the original lessor executed a supplemental agreement to the original lease. The supplemental agreement provided for the addition of 7,800 square feet to the demised premises. It also increased the monthly rent, extended the term for 15 years following completion of the addition, and granted Baker's the option of two successive 5-year extensions.

The original lease provides, in relevant parts:

(2) Nature of Business and Restrictions.

[Baker's] shall conduct in and upon the premises a retail grocery supermarket and there shall be no restriction or limitation upon the articles sold therein, except that no prescription drugs shall be sold. [The Feldmans' predecessor] covenants that it will not lease any portion of the shopping center to any other person, firm or corporation to be used in the sale of groceries, meats and produce, or any of such lines, except for a delicatessen, which delicatessen shall occupy an area not to exceed twenty-five hundred (2500) square feet.

. . . .

(15) <u>Continued Occupancy.</u>

[Baker's] covenants to, and it is of the essence of this lease, that [Baker's] shall, continuously and uninterruptedly during the term of this lease, occupy and use the premises for the purpose hereinabove specified, except while premises are untenantable by reason of fire or other unavoidable casualty, and in this connection, it is agreed that in case of breach of this covenant, [Baker's] shall, in addition to the rental hereinabove provided for, pay to the [Feldmans' predecessor] monthly a sum equal to twenty-five (25%) per cent of the monthly rental stipulated herein, for each and every month during which the premises are not so continuously and uninterruptedly used and occupied, as liquidated damages for [Baker's] breach of covenant, it being recognized by the parties that the exact amount of damages to the [Feldmans' predecessor] on account of such breach cannot be accurately ascertained. This provision shall, however, in no wise abridge or affect any other right or remedy which the [Feldmans' predecessor] may have on account of or in connection with [Baker's] breach of this covenant.

The preamble of the supplemental agreement declares:

WHEREAS, [the Feldmans are] . . . bound by a certain lease agreement dated the 25th day of June, 1965, by virtue of which certain premises . . . were leased to Baker's . . . and which lease agreement . . . is by this reference deemed incorporated herein to all intents and purposes as if set forth verbatim as a part hereof, and

WHEREAS, the parties hereto have agreed to alter, modify, as well as supplement the [original lease] to the extent herein specifically provided and to affirm the same in all other respects.

The supplemental agreement also reads, in other relevant parts:

<u>Additional Rent and Additional Rent Adjustment</u>

2.01 Beginning with the sixtieth (60th) day next following the substantial completion of the [addition] the rent provided in the [original lease] shall be altered and modified. The annual rental shall be increased thereafter

by the product derived by employing the square foot floor area of the [addition] as the multiplicand and $4.25 as the multiplier, such product, referred to hereafter as the "Additional Rent" . . . .

. . . .

7.01 At any time subsequent to the fifth (5th) year following the Term Commencement Date, Baker's may from time to time assign or sublet its interest in this lease and the Leased Premises to any person, firm or corporation for any lawful retail purpose not in violation of any existing use restrictions herein contained or theretofore granted by [the Feldmans] to any other occupant of the Shopping Center. . . .

. . . .

7.03 The provisions of this Supplement shall, where in conflict, supersede those of the [original lease]. In other respects, the terms and provisions of the [original lease] are affirmed by the parties and shall be and remain fully effective between them.

While Baker's made rental payments, it, in June 1990, ceased operating its retail grocery store at the demised premises, vacated the premises, and opened a new retail grocery store in a competing shopping center. It also removed shelving, refrigerated units, compressors, and other items.

In the course of these proceedings, the district court issued a temporary restraining order which directed the parties to preserve the status quo by requiring Baker's to continue paying the rent due under the lease, without prejudice "to the respective contentions or positions of any of the parties." In entering its summary judgment in favor of Baker's, the district court ordered that the temporary restraining order become a temporary and permanent injunction preventing the Feldmans "from affecting [Baker's] continued rights in the [demised] premises." The district court also dismissed the Feldmans' counterclaim, which sought restitution of the premises and damages resulting from the actions of Baker's.

With the foregoing matters in mind, we next turn our attention to whether, as Baker's claims, the Feldmans waived their right to appeal. Pointing out that the Feldmans have

accepted the rental payments the district court ordered it to pay, Baker's attempts to invoke the rule that a party who accepts the benefits of a judgment in its favor may not appeal therefrom. *Snyder v. Hill*, 153 Neb. 721, 45 N.W.2d 757 (1951). See, also, *Giese v. Giese, ante* p. 60, 497 N.W.2d 369 (1993); *Shiers v. Shiers*, 240 Neb. 856, 485 N.W.2d 574 (1992); *Hormandl v. Lecher Constr. Co.*, 231 Neb. 355, 436 N.W.2d 188 (1989).

The most obvious flaw in this contention is that the Feldmans are not appealing from a judgment in their favor. The judgment was adverse to them, denying them damages and restitution of the demised premises. Moreover, by incorporating the terms of the temporary restraining order, the judgment in favor of Baker's maintains the status quo throughout the course of this litigation by providing that the required rental payments be made without prejudice to the rights of any party. As noted in *State ex rel. Douglas v. Ledwith*, 204 Neb. 6, 281 N.W.2d 729 (1979), the rule which Baker's seeks to invoke applies only where the judgment benefits the party seeking to appeal and not where compliance is involuntary or compelled.

Thus, the Feldmans have not, by accepting the rental payments, waived their right to appeal.

That determination brings us to a question of first impression: May this court, upon conducting further review of a decision of the Court of Appeals, look beyond the error assigned in the petition seeking such?

Neb. Ct. R. of Prac. 2F(3) (rev. 1992) provides that the petition for further review and supporting memorandum brief "shall set forth specifically and in detail the error alleged to have been made by the Court of Appeals" and further requires that the memorandum brief discuss any error assigned. Moreover, Neb. Ct. R. of Prac. 9D(1)d (rev. 1992) requires an appellant's brief to contain a separate and concise statement of each error about which complaint is made. And we have held that in accordance with the provisions of that rule, in order to be considered by an appellate court, an error must not only be assigned, but it must be discussed in the brief of the complaining party. See, *Hamilton v. City of Omaha, ante* p. 253, 498 N.W.2d 555 (1993); *Shelter Ins. Co. v. Frohlich, ante*

p. 111, 498 N.W.2d 74 (1993); *Maack v. School Dist. of Lincoln*, 241 Neb. 847, 491 N.W.2d 341 (1992). However, rule 9D(1)d also provides that we may, at our option, notice a plain error not assigned. *In re Estate of Fischer*, 227 Neb. 722, 419 N.W.2d 860 (1988).

We have also written, however, that plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. Plain error may be asserted for the first time on appeal or be noted by the appellate court on its own motion. *Katskee v. Nevada Bob's Golf of Neb.*, 238 Neb. 654, 472 N.W.2d 372 (1991).

We now hold that an error in an opinion of the Court of Appeals concerning which no complaint is made in a petition for further review, but which is encompassed within the errors raised before the Court of Appeals and which, if uncorrected, would result in an erroneous direction for retrial of a cause, constitutes plain error for consideration on further review.

We thus consider the correctness of the Court of Appeals' determination that the lease is ambiguous and requires explanation through parol evidence. Instruments made in reference to and as part of the same transaction are to be considered and construed together; that the instruments were made or dated at different times is not significant if they are related to and were part of the transaction. *Alder v. First Nat. Bank & Trust Co.*, 241 Neb. 873, 491 N.W.2d 686 (1992); *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992); *Lauritzen v. Davis*, 214 Neb. 547, 335 N.W.2d 520 (1983); *Northland Mortgage Co. v. Royalwood Estates, Inc.*, 190 Neb. 46, 206 N.W.2d 328 (1973).

Furthermore,

A contract must be construed as a whole and, if possible, effect must be given to every part thereof. *Mills v. Aetna Ins. Co.*, 168 Neb. 612, 96 N.W.2d 721 (1959). . . .

In interpreting contracts, the court as a matter of law must first determine whether the contract is

ambiguous. . . .

An instrument is ambiguous if a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. . . . "The fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous." . . . If a contract is unambiguous, the intent of the parties must be determined from the contents of the contract. . . .

. . . .

. . . The terms of a contract are to be accorded their plain and ordinary meaning as ordinary, average, or reasonable persons would understand them.

*Crowley v. McCoy*, 234 Neb. 88, 91-93, 449 N.W.2d 221, 224-25 (1989).

In applying the foregoing rules, we again note that the preamble of the supplemental agreement recites that to the extent specifically provided, the parties altered, modified, and supplemented the original lease. The final paragraph of the supplemental agreement provides that where in conflict, the supplemental agreement supersedes the original lease, but that in other respects the terms and provisions of the original lease stand affirmed and shall be and remain fully effective. Thus, the original lease controls except in those instances in which the supplemental agreement specifically altered or modified it.

As set forth earlier in this opinion, paragraph 7.01 of the supplemental agreement permits Baker's, after the fifth year following the term commencement date, to assign or sublet the leased premises "for any lawful retail purpose not in violation of any existing use restrictions herein contained or theretofore granted by [the Feldmans] to any other occupant of the Shopping Center." The plain and ordinary meaning of this language permits the demised premises, after the specified 5-year period, to be used for other than a retail grocery supermarket, but does not obviate the continuous occupancy requirement of paragraph 15 of the original lease.

Thus, the Court of Appeals committed plain error in ruling that the lease is ambiguous. Baker's has breached the lease by

failing to maintain continuous occupancy.

Accordingly, the judgment of the Court of Appeals reversing the judgment of the district court and remanding the cause for further proceedings is affirmed as modified in accordance with this opinion. That is to say, the judgment in favor of Baker's is to be vacated, set aside, and held for naught; the Feldmans' counterclaim is to be reinstated; and a trial is to be had on the matter of the Feldmans' damages.

AFFIRMED AS MODIFIED.

WHITE and LANPHIER, JJ., not participating.